NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REUEL MEBUIN, | : |
| Plaintiff, | : Civil Action No. 13-0443 (DMC) |
| v. | : OPINION |
| UNITED STATES OF AMERICA, et al., | : |
| Defendants. | : |

APPEARANCES:

Reuel Mebuin
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105
    Plaintiff pro se

**CAVANAUGH,** District Judge

    Plaintiff Reuel Mebuin, an alien detainee confined at Essex County Jail in connection with removal proceedings, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

---

[1] Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint[2] to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he is a citizen of Cameroon who was granted Legal Permanent Resident status in 2004. He was taken into custody by immigration authorities in 2012 and placed in removal proceedings. He now is confined at Essex County Jail in connection with those removal proceedings.

Plaintiff alleges that on July 6, 2012, he was transferred from Cell 330 to Cell 320 in the same Unit, Pod 2C4, of Essex County Jail. According to Plaintiff, Cell 320 contained a sexually graphic picture, and some gang related materials were carved on the door. Plaintiff alleges that he notified correctional officers several times, requesting that something be done about the picture and carvings, which Plaintiff considered both scary and offensive. Despite his protestations, Plaintiff alleges, the cell door was not repainted until on or about December 12, 2012.

In addition, Plaintiff alleges that on or about November 15, 2012, he went to ask Defendant Officer Alvarez for some paper, in response to which Officer Alvarez allegedly made

---

[2] On April 9, 2013, the Clerk of the Court received and docketed in this action an Application for leave to file a proposed amended complaint, which was attached. It is apparent from Plaintiff's correspondence and the allegations of the proposed amended complaint that he intended to amend the Complaint in another action filed by Plaintiff, Mebuin v. U.S., Civil Action No. 13-0446 (D.N.J.). Accordingly, this Court will direct the Clerk of the Court to file the request in Civil Action No. 13-0446 and will screen the Complaint in this action as originally filed.

2

an obscene gesture and laughingly asked Plaintiff if he had pornographic pictures in his cell or was copying some pornographic pictures. Plaintiff alleges that he wrote a letter to the Office of the Inspector General in the Department of Homeland Security complaining about this incident and that he delivered a copy of the letter to a Mr. Anthony Perillo (otherwise unidentified).

Plaintiff further alleges that on December 29, 2012, the detainees in his Unit were ordered to the gym for a fire drill and to sit on the gym floor. Plaintiff alleges that the gym was very cold and that he asked Defendant Officer John Doe if he could return to his cell to get his sweat shirt for warmth. According to Plaintiff, Defendant Officer John Doe responded by shoving him so hard that it felt like a punch, which he alleges disoriented him, causing him to stumble. Plaintiff alleges that another officer stabilized him, but that as he stumbled along, he experienced pain in an already injured knee. Plaintiff alleges that he notified a sergeant of this incident about two hours later, but that no further action was taken about it.

Additionally, Plaintiff alleges that on September 12, 2012, Defendant Officer Raimato came into the Computer Lab and Law Library and ordered the detainees there to return to their units. Plaintiff alleges that Defendant Officer Raimato yelled obscenities at the detainees and that some of his spit unintentionally landed on Plaintiff's face, all of which left Plaintiff feeling "traumatized and shaken."

Plaintiff characterizes the above-referenced events as violations of his rights to due process, equal protection, and freedom from cruel and unusual punishment. Plaintiff names as Defendants here the United States of America, Secretary of Homeland Security Janet Napolitano, Department of Homeland Security New Jersey Field Director John Tsoukaris, Warden Roy L. Hendricks, and Officers Alvarez, Raimato, and John Doe. Plaintiff seeks compensatory damages and injunctive relief in the form of an order compelling the Department of Homeland Security

3

"to take appropriate steps to protect and guarantee a detainee's rights to freedom, safety and security." (Complaint, at 8.)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), or in which a prisoner seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 28 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915 because Plaintiff has sought and been granted leave to proceed in forma pauperis.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Belmont v. MB Inv. Partners, Inc., 708

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

4

F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Accordingly, § 1983 applies to Plaintiff's claims against state actors Warden Roy L. Hendricks and Officers Alvarez, Raimato, and John Doe.

5

## IV. BIVENS V. SIX UNKNOWN AGENTS

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988). Thus, since Carlson, the Supreme Court "has consistently refused to extend Bivens liability to any new context or new category of defendants." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001).

Relying upon Bivens, several circuit courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement. See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980). Accordingly, this Court concludes that Plaintiff's claims against the federal officials Janet Napolitano and John Tsoukaris are governed by Bivens.

## V. ANALYSIS

A. The Claim Against the United States

The United States has sovereign immunity except where it consents to be sued. U.S. v.

Bormes, 133 S.Ct. 12, 16 (2012); United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), cited in Anselma Crossing. L.P. v. U.S. Postal Service, 637 F.3d 238, 240 (3d Cir. 2011), or against any of the individual federal officials in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1); White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir 2010). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also CAN v. U.S, 535 F.3d 132, 141 (3d Cir. 2008) (quoting Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994)); United States v. Muniz, 374 U.S. 150 (1963).

Assuming that an FTCA claim would otherwise be viable, a district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. See McNeil v. United States, 508 U.S. 106 (1993); Deutsch, 67 F.3d at 1091.

> An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the

agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). See also Hedges v. U.S., 404 F.3d 744, 752 (3d Cir. 2005). Here, Plaintiff has failed to plead any facts demonstrating that he has exhausted his administrative remedies under the FTCA. Accordingly, all claims against the United States, and against the federal officers in their official capacities, will be dismissed without prejudice.

B.  Vicarious Liability

Plaintiff has named as Defendants here several individuals who are not alleged to have had any personal participation in the alleged violations of Plaintiff's civil rights, including federal officials Janet Napolitano and John Tsoukaris, as well as "state actor" Warden Roy L. Hendricks. The claims against these individuals will be dismissed without prejudice for failure to state a claim.

Supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Similarly, supervisors in Bivens actions may not be held liable on a theory of respondeat superior. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Bistrian v. Levi, 696 F.3d 352, 366

8

(3d Cir. 2012) (citing Iqbal).

Accordingly, as the claims against them appear to be based solely on an untenable theory of vicarious liability, all claims against Defendants Janet Napolitano, John Tsoukaris, and Roy L. Hendricks will be dismissed without prejudice.

C. Due Process Claims

Plaintiff further alleges that the incidents and conditions he describes amount to violations of the Due Process Clauses of the Fifth and Fourteenth Amendments.[4]

Pre-trial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.[5] See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. ...

---

[4] Because Plaintiff is a civil detainee, his claims regarding his conditions of confinement are governed by the Due Process Clauses of the Fifth Amendment (insofar as they involve federal actors) and the Fourteenth Amendment (insofar as they involve state actors), and not by the Eighth Amendment proscription against cruel and unusual punishment, which applies only to those who have been convicted and sentenced for criminal offenses. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Accordingly, all claims asserted under the Eighth Amendment will be dismissed with prejudice.

[5] Civil immigration detainees are entitled to the same due process protections as criminal pretrial detainees. See Adekoya v. Chertoff, 431 F.App'x 85, 88 (3d Cir. 2011) (citing Edwrds v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)); Contant v. Sabol, 431 F.App'x 177, 178-79 (3d Cir. 2011) (same).

9

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

441 U.S. at 535-39 (citations omitted).

The Bell Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

With respect to Plaintiff's claim that Officer "John Doe" shoved him during the fire drill, courts are agreed that not every unwanted touching of a detainee by a correctional officer amounts to a due process violation. To state a claim for a constitutional violation, a plaintiff must show "something more than the use of de minimis force." See Moher v. U.S., 875 F.Supp.2d 739, 758 (W.D. Mich. 2012) (citing Bell and collecting cases). Cf. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (deciding, under the Eighth Amendment "cruel and unusual

punishment" clause, that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action" and excluding from Eighth Amendment protection the de minimis use of physical force), cited and applied in Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Thus, "[g]enerally, a single isolated push, shove, punch, or blow" by a correctional officer does not rise to the level of a constitutional violation. Moher, 875 F.Supp.2d at 758. "'The same holds true even when the push or shove appears to be unnecessary.'" Jones v. Lee, Civil Action No. 09-11283, 2012 WL 683362, *5 (E.D. Mich. Mar. 2, 2012) (citations omitted), report and recommendation adopted 2012 WL 1048541 (E.D. Mich. Mar. 28, 2012). See also Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) ("Punishment must mean something more than trifling injury or negligible force. Otherwise every touch would be actionable and every alleged 'push or shove' would entitle [a] plaintiff to a trial. ...To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.").

Here, all of the detainees in Plaintiff's housing unit were gathered in the gym for a fire drill. Thus, the situation was one in which a need to maintain order clearly was present. Plaintiff admits that he left his assigned place to ask to return to his cell. He reports only a single shove that caused him to stumble, but he was protected from falling by another officer. He did not require medical attention as a result of the shove. Under the circumstances, this de minimis use of force does not rise to the level of a constitutional violation. Cf. Paterson v. Brown, Civil Action No. 09-1298, 2010 WL 2927479, *2-3 (D.S.C. July 22, 2010) (no constitutional violation where officer shoved detainee who argued with officer and did not obey order to return to his cell).

Plaintiff also alleges that he was subjected to sexually offensive and frightening gang-

11

related images on his cell door for a period of approximately five months and that he was verbally harassed by Officer Raimato on a single occasion and by Officer Alvarez, who made obscene gestures and remarks, on another occasion. Again, none of these discomforts amounts to punishment in violation of the Due Process Clause. See Brown v. Hamilton Police Dept., Civil Action No. 13-0260, 2013 WL 3189040, *2 (D.N.J. June 21, 2013) (verbal harassment) (collecting cases); Barber v. Jones, Civil Action No. 12-2578, 2013 WL 211251, *4-6 (D.N.J. Jan. 18, 2013) (verbal harassment) (collecting cases). Cf. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (sexually explicit comments by officer do not violate Eighth Amendment).

It does not appear that Plaintiff could cure the deficiencies in the Due Process claims by amendment; accordingly, they will be dismissed with prejudice.

D.  Equal Protection Claims

Plaintiff asserts generally that the events described in the Complaint violate his right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), quoted in Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal

protection claim; a plaintiff also must prove that the defendant intended to discriminate. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor. Village of Arlington Heights, 429 U.S. at 265-66, cited in Community Services, Inc. v. Wind Gap Mun. Authority, 421 F.3d 170, 177 (3d Cir. 2005).

Here, Plaintiff has failed to allege any facts that would suggest that he was treated differently from other persons who are similarly situated or that any Defendant intended to discriminate against him. Cf. Al-Shahin v. U.S. Dept. of Homeland Security, Civil Action No. 06-5261, 2007 WL 2985553, *11 (D.N.J. Oct. 4, 2007) (dismissing generalized allegation of equal protection violation asserted by alien detainee challenging conditions of confinement). Accordingly, the equal protection claim will be dismissed without prejudice.

E. Application for Appointment of Counsel

Plaintiff's Motion for the appointment of counsel will be denied without prejudice to Plaintiff or this Court revisiting the issue at a later date should circumstances warrant.

Indigent persons raising civil rights claims have no absolute constitutional right to counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;

(6) whether the plaintiff can attain and afford counsel on his own behalf.

[Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).] This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time. As a preliminary matter, Plaintiff has not presented a claim with merit in fact and in law. In addition, with respect to the other factors, Plaintiff asserts only that he is without means to pay a lawyer himself and that he has been unable to locate a lawyer willing to represent him in this matter. These factors alone are not sufficient to justify appointment of counsel. Accordingly, this Motion will be denied, without prejudice to reconsideration should Plaintiff be able to state a claim at a later date.

## VI. CONCLUSION

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim with respect to those claims dismissed without prejudice, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[6] An appropriate order follows.

/s/ Dennis M. Cavanaugh
Dennis M. Cavanaugh
United States District Judge

Dated: Aug 5, 2013

---

[6] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. Apr. 4, 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.